## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

HECTOR M. GARCIA, SR.,                    )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )    C.A. No. 1:20-CV-0043-MSM-PAS
                                          )
UNITED OF OMAHA LIFE                      )
INSURANCE COMPANY,                        )
                                          )
        Defendant.                        )
                                          )

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the Motion for Summary Judgment of the defendant United of Omaha Life Insurance Company ("Omaha").  Omaha asserts that as a matter of law, the plaintiff, Hector M. Garcia, Sr., and Omaha mutually rescinded a life insurance policy to which Mr. Garcia was the beneficiary.  As such, Omaha argues, Mr. Garcia cannot sustain his contractual claims.

For the following reasons, the Court GRANTS Omaha's Motion. (ECF No. 20).

## I.   FACTS

On June 24, 2015, the plaintiff's decedent, Marta Garcia, met with an insurance agent, Debbie Benn of the Benn Agency, and signed an application for a $181,000 term life insurance policy with United of Omaha Life Insurance Company ("Omaha").  (ECF No. 1-1 ¶¶ 8, 14.)  Mrs. Garcia's husband, the plaintiff Hector M.

1

Garcia, Sr., asserts that Mrs. Garcia was not proficient in English, and that she had informed Ms. Benn of her language barrier. (ECF No. 27 ¶¶ 4, 7.) Ms. Benn then "took it upon herself to complete the life insurance application and presented the completed application for Mrs. Garcia to sign." *Id.* ¶ 8. Mr. Garcia, who does not assert that he is not proficient in English, was present at this meeting. *Id.* ¶ 6.

The application included questions about whether Mrs. Garcia had been diagnosed with or received treatment for certain conditions. Specifically, the application asked:

> 2. Has the Proposed Insured ever (i) been diagnosed with, or (ii) received care or treatment for, or (iii) been advised by a member of the medical profession to seek treatment for, or (iv) consulted with a health care provider regarding:
>
> …
>
> (d) Chronic Kidney Disease, end-stage Renal Disease with dialysis, or Liver Disease including Cirrhosis, Hepatitis B or Hepatitis C?
>
> …
>
> 4. In the past 12 months, has the Proposed Insured: …
>
> (b) consulted with a physician for chronic cough, unexplained weight loss greater than 10 pounds (other than due to diet and exercise), fatigue or unexplained gastrointestinal bleeding?
>
> …
>
> 10. In the past 5 years, has the Proposed Insured consulted with a doctor or been hospitalized or treated by a health care provider for any other health condition (other than routine physical checkups, eye, employment or FAA examinations)?

(ECF 22-1 at 34-35).

Mrs. Garcia's response to each of these questions was "no." *Id.* On July 6, 2015, Omaha issued a term life insurance policy to Ms. Garcia. She designated Mr. Garcia as the primary beneficiary.

Mrs. Garcia died on February 19, 2016, due to "cardiopulmonary arrest, multifactorial shock, acute renal failure" with "decompensated liver cirrhosis." (ECF No. 22-2.) Mr. Garcia thereafter submitted a claim to Omaha for the death benefit under the policy.

Omaha conducted an investigation and discovered Mrs. Garcia's history of health conditions not disclosed at the time of the policy application. Specifically, Omaha received records from Dr. Eric Goldberg from April 10, 2015, documenting treatment of Mrs. Garcia for liver disease, as well as records from Dr. Claude E. Younes from June 16, 2015, diagnosing Mrs. Garcia with liver disease. (ECF Nos. 22-3 & 22-4.) Further, Dr. Younes' record of October 10, 2014, reported that Mrs. Garcia had been admitted to a hospital for "upper GI bleeding," and he provided a diagnosis of "Cirrhosis of Liver." (ECF No. 22-5.)

By a letter dated September 28, 2016, Omaha wrote to Mr. Garcia the following:

> Had we been aware of Marta J. Garcia's condition and treatment at the time the policy was applied for, we would not have issued the policy. The contract, therefore, is being rescinded. This means it is considered to have never been in force, effective the issue date. Our refund of $1,608.48 for the premiums paid is enclosed. No claims are payable. If any additional premium is received, this will also be refunded.

(ECF No. 22-6.)

Mr. Garcia cashed the refund check and has made no effort to return these funds.  (ECF No. 22 ¶¶ 21, 23.) He states by way of affidavit that he did not understand the contents of Omaha's letter.  (ECF No. 27 ¶ 9.)   He did, however, retain an attorney in October 2016.  *Id.* ¶ 10.  His attorney wrote to both Omaha and the Benn Agency requesting them to contact him, though he did not contest the rescission.  (ECF No. 27-2 & 27-3.)

Mr. Garcia filed this action in state court on January 15, 2020, alleging breach of contract and "breach of covenant of good faith and fair dealing in violation of fiduciary duties."  Omaha removed the action to this Court on January 30, 2020, on the grounds of diversity jurisdiction.  Because this case invokes diversity jurisdiction, the Court applies the substantive law of the state of Rhode Island.  *See Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug. Inc.,* 895 F.2d 46, 50 (1st Cir. 1990).  Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it carries with it the potential to affect the outcome of the suit under the

applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000).

## III.   DISCUSSION

The issue before the Court is whether it must be held as a matter of law that the parties mutually rescinded the policy in 2016.  If so, the plaintiff cannot now sustain his contractual claims on an already rescinded contract.[1]

The First Circuit has recognized *Klanian v. New York Life Insurance Company*, 68 R.I. 126, 26 A.2d 608 (1942), as the "seminal Rhode Island case on mutual recission." *Pruco Life Ins. Co. v. Wilmington Trust Co.*, 721 F.3d 1, 6 (1st Cir. 2013).  In *Klanian*, the insurance company sent the plaintiff a letter stating its intent to rescind the policy and included a check refunding the premium payments.  *Id.* at 609-10.  The plaintiff cashed the check – which the court held raised a "reasonable inference" of mutual recission.  *Id.* at 610, 613.  But the plaintiff also was illiterate and did not understand the contents of the letter.  *Id.* at 610.  The day following his receipt of the insurer's letter, when he did learn of the recission, the plaintiff dictated a letter to the insurance company contesting the recission.  *Id.*   Additionally, a few days later, his attorney drafted a letter to the insurer that contesting the recission and, importantly, returning the refunded premiums.  *Id.*

---

[1] It is important to note that the pending issue is not whether Omaha was unilaterally entitled to rescind the policy because of Mrs. Garcia's apparent misrepresentations in her application.  Under Rhode Island law, whether a misrepresentation is material, and therefore a proper basis for an insurer's unilateral recission, is a question of fact for a jury.  *See* R.I.G.L. § 27-4-10.

The *Klanian* court compared those facts to other cases where courts had found a mutual recission as a matter of law.  In those cases, the distinguishing factors were that the plaintiffs had accepted the refunded premiums and did not take prompt action to contest the insurer's recission. *See Peterson v. New York Life Ins. Co.*, 240 N.W. 659 (Minn. 1932) (plaintiff waited a month after cashing the refund check before taking action to contest the recission); *Warren v. N.Y. Life Ins. Co.*, 58 P.2d 1175 (N.M. 1936) (plaintiff waited six months before cashing the check and did not attempt to contest the recission for three years); *Kincaid v. New York Life Ins. Co.*, 66 F.2d 268 (5th Cir. 1933) (three months after receiving a refund check, the plaintiff corresponded with the insurer over its right to rescind but then cashed the check without further objection; his widow later contested the recission).  Given the *Klanian* plaintiff's prompt actions in returning the refund amount and contesting the recission, the court held that whether he had the intent to rescind was a jury question. *Id.* at 613.

In the more recent *Pruco* matter, the First Circuit, applying Rhode Island law, relied upon *Klanian*.  721 F.3d 1.  There, an insurer discovered that a policy application contained material misrepresentations about the health of the insured. *Id.* at 5.  The insurer sent a letter expressing its intent to rescind the contract and returned the policy premiums.  *Id.*  The Court held that there was a mutual recission as a matter of law because the recipient of the refund did not attempt to return it and did not indicate that it did not intend to agree to rescission.  *Id.* at 8.

*Klanian* and *Pruco* instruct that, to overcome an inference of a mutual recission of a life insurance contract, a party must indicate his or her disagreement with the insurer's recission shortly after receiving notice of the same and return any refunded premiums.  Importantly, the *Pruco* court held that "*Klanian* never suggests that a party's unexpressed intentions, evidenced by nothing more than that party's bare, post hoc assertions, can overcome the inference of mutual recission." *Id.* at 8 (citing *Newport Plaza Assocs. v. Durfee Attleboro Bank (In re Newport Plaza Assocs.)*, 985 F.2d 640, 643-44, 646 (1st Cir. 1993) (noting that, under Rhode Island law, "[c]ontracts ordinarily depend on objective indicia of consent, not on a party's subjective expectations")).  Thus, a party seeking to overcome the inference of mutual recission must demonstrate evidence that it is expressed dissent to the recission.  *Id.*

Here, the plaintiff did not contest Omaha's recission when it occurred in 2016. Within weeks of his receipt of the recission letter, he consulted with an attorney.  But he did not then, and he has not to date, returned the premium refund.  His attorney did send two letters in October 2016, one to Omaha and one to the insurance agent, but neither set forth any dissent to Omaha's recission.[2]  In his affidavit in support of his objection to this motion, the plaintiff states that he did not understand Omaha's letter.  This is belied by the fact that he consulted an attorney shortly after receipt of the letter and refund check.   Given that there is no objective evidence of his disagreement with the recission, this is the type of bare, pos hoc assertion that does

---

[2] In any event, the letters of Mr. Garcia's attorney are not authenticated as required under Rule 56(e).  *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000).

not overcome the inference of mutual recission.

Thus, unlike the prompt and decisive actions of the plaintiff in *Klanian*, the plaintiff here received Omaha's recission letter, cashed the premium refund check and has never made any attempt to return those funds.  And while he retained counsel, he never explicitly contested the policy recission, and he waited over three years to file this action.

## IV.   CONCLUSION

Because Mr. Garcia has not presented evidence to overcome the inference of mutual recission of the life insurance policy, he cannot sustain his contractual claims as a matter of law.  Omaha's Motion for Summary Judgment (ECF No. 20) therefore is GRANTED.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge
February 2, 2021